UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


DAVID BURKE,                     )
                                 )
            Petitioner,          )    CIVIL ACTION NO.
                                 )    05-12266-DPW
v.                               )
                                 )
LUIS SPENCER,                    )
SUPERINTENDENT,                  )
                                 )
            Respondent.          )
                                 )


MEMORANDUM AND ORDER
November 23, 2011

After unsuccessfully appealing his second-degree murder conviction in Massachusetts state courts, petitioner David Burke now seeks a federal writ of habeas corpus. As grounds for federal relief, Burke now argues that (A) the state trial court's jury instructions improperly shifted the burden of proof for the voluntary manslaughter and firearm and ammunition possession charges; (B) prosecutors lost or destroyed potentially exculpatory evidence; (C) he received ineffective assistance of counsel; and (D) evidence and testimony admitted at trial was highly prejudicial and denied Burke due process.[1]  Concluding

---

[1]  Burke's original petition contained seven claims, some of which were unexhausted.  After the Respondent moved to dismiss the action for failure to exhaust, Judge Saris afforded Burke the opportunity to withdraw his unexhausted claims.  He did so. Consequently this Memorandum and Order addresses Burke's claims as they remain after the petition was reassigned to my docket.

that Burke is not entitled to relief in this court, I will
dismiss his petition.

## I.   BACKGROUND

<u>A.</u>   <u>Factual Background</u>

When federal courts examine a petitioner's claims on habeas
review, state court factual determinations are presumed correct
absent clear and convincing evidence to the contrary.  28 U.S.C.
§ 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).
The factual determinations are recounted in the Massachusetts
Appeals Court's summary of the facts:

> The Commonwealth's proof tended to show that the
> defendant, who was dealing in cocaine, met several
> buyers on the street and was informed that his
> competitors "down the street" were underpricing him.
> The defendant followed them to 77 Willowwood
> Street where Rodney Lochard, the victim, and two others
> were playing cards.  Prompted by the defendant's
> accusation that they were selling drugs on his block
> (T.2: 138-141), the defendant challenged them.  An
> altercation ensued.  According to one of the victim's
> companions, who testified at trial, the defendant's
> exact words were, "Which one of you young motherfuckers
> are trying to run shit on my block?" (T.2: 141)  The
> card players all denied that they were selling drugs on
> the block.  Undeterred, the defendant came closer to
> the yard, and from behind a wall, repeated his
> accusation.  The victim, with disdain, brushed him off,
> and the defendant countered with a slap on the face.
> The imbroglio quickly escalated when the defendant
> pulled out a .380 caliber semi-automatic handgun and
> shot the victim.  Two rounds struck him, the fatal one
> entering his lower back and the other through his
> thigh.  Police were called by the victim's companions
> and the victim died shortly thereafter at the hospital.
> The defendant fled the scene and remained at large for
> nearly six months when he was discovered by the police
> as a passenger in a motor vehicle that had been stopped
> by the police.

*Commonwealth v. Burke*, 2004 WL 1335757, at *1 (Mass. App. Ct. June 15, 2004).

B.   Trial

On March 4, 1996, Burke was indicted for murder in the first degree, unlawful possession of a firearm, and unlawful possession of ammunition. *Burke*, 2004 WL 1335757, at *1 and n.1. Immediately before dismissing the jury for deliberations, the trial judge charged the jury with oral instructions on first-degree murder, the lesser included offenses of second-degree murder and voluntary manslaughter, and on self-defense.

The trial judge's oral instruction on voluntary manslaughter was as follows:

> In order to prove the defendant guilty of voluntary manslaughter, the Commonwealth must prove three elements beyond a reasonable doubt.  First, that the defendant inflicted an injury upon Rodney Lochard from which he died; second, that the defendant injured Rodney Lochard as a result of a sudden combat or in the heat of passion or using excessive force in self-defense; and third, that the killing was committed unlawfully without legal excuse or justification.

Burke's counsel objected to this instruction because the trial judge failed to "state that the government has the burden of proof of proving behind a reasonable doubt that there wasn't just provocation or there wasn't a sudden quarrel and that there wasn't a belief even if unreasonable of self defense."

On December 24, 1997, a jury found Burke guilty of second-degree murder and the unlawful firearm possession charge.  He was

sentenced to a mandatory term of life imprisonment for the second degree murder conviction, and a concurrent term of four to five years for the firearm offense.  He consented to having the ammunition possession charge placed on his file.

## C.   Post-Trial Proceedings

Burke filed a notice of appeal from his conviction on January 23, 1998.  On May 24, 2002, while his direct appeal was pending, Burke filed a motion for a new trial in the Superior Court.  The trial judge denied the motion for a new trial on April 10, 2003.  Burke appealed, and the Appeals Court consolidated that appeal with his appeal of his conviction.

The Appeals Court affirmed Burke's conviction and the trial judge's order denying Burke's motion for a new trial on June 14, 2004.  *Burke*, 2004 WL 1335757, at *3.  The court concluded that the trial judge's instruction as to voluntary manslaughter was erroneous in light of *Commonwealth v. Acevedo*, 695 N.E.2d 1065 (Mass. 1998), but that this error was harmless.  The Appeals court held that although "the erroneous instruction improperly treated provocation as an element of manslaughter, which it is not," the error was harmless because it "'was located in a portion of the charge that was plainly separate from the instructions on murder, thereby making it highly unlikely that the jury would have combined the conflicting concepts.'"  *Id.* at *2 (quoting *Commonwealth v. Gilmore*, 794 N.E.2d 1284, 1290 (Mass.

4

App. Ct. 2003)).  Thus, reading the correct instructions on murder in context with the erroneous voluntary manslaughter instruction, the Appeals Court was satisfied that the error was harmless since Burke was convicted of second-degree murder, not voluntary manslaughter.

The Appeals Court affirmed the trial judge's decision not to grant Burke's motion for a new trial.  First, the court noted that the post-trial DNA testing which revealed that blood found on Lochard's gun holster was Lochard's was not "newly discovered evidence," citing the notice given by the prosecution to Burke's counsel before trial that the police had found the blood-stained holster at the crime scene.  "Defense counsel, if he had so desired, could have conducted a private test or sought the State crime laboratory to conduct the same by seeking leave of court. He did neither."  *Id.*  Thus, the evidence was not "newly discovered" because defense counsel had known about it since before trial began.

Second, the court agreed with the trial judge that the DNA evidence was not material, because it would have been cumulative of other evidence that Lochard was armed.  "From police testimony, the jury knew that the police had found a blood-stained holster and two rounds of ammunition that were incompatible with the defendant's.  Statements of the defendant were admitted in evidence establishing that Lochard was armed. .

. . Thus, the DNA evidence would have merely affirmed that the victim had bled at the scene and could not have affected the jury's verdicts." *Id.*

As to Burke's claim that prosecutors failed to preserve potentially exculpatory evidence in the form of a detective's handwritten notes from Burke's initial taped interview, the Appeals Court found that the destruction did not rise to the level of a violation of Burke's rights under *Commonwealth v. Willie*, 510 N.E.2d 258, 261-62 (Mass. 1987). *Id.* at *3. First, the court noted that the detective "had no duty to retain his notes" taken before Burke gave his formal recorded statement. Second, the detective testified that the notes did not contain any exculpatory information or any significant matter not repeated in Burke's taped statement. Finally, even if there was exculpatory material in the detective's notes, his "conduct in discarding his notes would not be egregious enough to justify dismissal as a prophylactic measure." *Id.* (citing *Commonwealth v. Lewin*, 542 N.E.2d 275, 283 (Mass. 1989)).

After examining the record and the trial judge's instructions, the Appeals Court found that Burke's claims regarding (1) the jury instructions on the firearms possession charge, (2) the prosecution's loss of Lochard's clothing, and (3) the admission of evidence now argued here to be highly prejudicial were "without merit." *Id.* On those issues, the

6

Appeals Court offered no independent analysis but rather purported to rely on "the sound reasoning of the Commonwealth's brief." *Id.*[2]

Accordingly, the Appeals Court affirmed Burke's convictions and affirmed the trial judge's decision to deny Burke's motion for a new trial. *Id.* The Supreme Judicial Court denied further appellate review of Burke's appeal on September 10, 2004. *Commonwealth v. Burke*, 815 N.E.2d 1084 (Mass. 2004). Burke filed this federal habeas corpus petition on November 15, 2005.

## II.   STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq., a federal court may grant a state prisoner habeas relief if the state court's decision on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[2]   I note that this is the third time in four months that I have confronted the practice by the Appeals Court of subcontracting to the prosecution all or, as here, a portion of its explication of the reasons for its decisions. As I observed in the recent prior cases,

> [w]hile I recognize that the Appeals Court, like many courts, has a demanding caseload, shorthand references to the briefing of a party as a grounds for decision does not encourage the appearance of independent judgment fundamental to a court's legitimacy. Nevertheless, this expedient does constitute a judgment by the state court on the merits of the issue.

*Exilhomme v. Spencer*, No. 08-10552, 2011 WL 3759219, at *12 n.10 (D. Mass. Aug. 24, 2011) (quoting *Jones v. Pepe*, No. 07-10032, 2011 WL 2971956, at *8 n.8 (D. Mass. July 20, 2011)).

established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The Supreme Court has held that "clearly established federal law" only "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Greene v. Fisher*, No. 10-637, --- S. Ct. ----, 2011 WL 5335411 (U.S. Nov. 8, 2011).  A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id.* at 413.

An "unreasonable application of" clearly established federal law occurs "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the . . . prisoner's case."  *Id.* at 407.  An application of clearly established federal law is unreasonable under this standard only if it is "objectively unreasonable," not merely if it is incorrect.  *Id.* at 409; *see also Grant v. Warden, Me. State Prison*, 616 F.3d 72, 76 (1st Cir. 2010) ("Under this deferential standard, the state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error." (citation and internal

8

quotation marks omitted)).  Finally, the First Circuit has interpreted the "unreasonable application" standard to mean that "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application."  *L'Abbe v. DiPaolo*, 311 F.3d 93, 98 (1st Cir. 2002) (citation and quotation marks omitted).

Even if a petitioner overcomes these hurdles, relief will be denied if the alleged error was harmless.  On habeas review, an error is harmless if it did not have "a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

## III.  DISCUSSION

### A.  Jury Instructions

Burke challenges his conviction based on three improper jury instructions, first for voluntary manslaughter, second for the unlawful firearm possession charge, and third for the unlawful ammunition possession charge.  None of Burke's challenges overcome section 2254's stringent requirements.

#### i.  *Voluntary Manslaughter*

Burke first claims that the trial judge gave the incorrect jury instruction for voluntary manslaughter in light of *Commonwealth v. Acevedo*, 695 N.E.2d 1065 (Mass. 1998), and therefore that his conviction for second-degree murder must be thrown out.  As the Appeals Court recognized, the trial judge's

instruction was "flawed" because "[h]e told the jury that the Commonwealth had to prove provocation in order to convict the defendant of voluntary manslaughter." *Burke*, 2004 WL 1335757, at *1. Under *Acevedo*, the proper instruction for the provocation element of voluntary manslaughter is that "where the evidence raises the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation." *Acevedo*, 695 N.E.2d at 1067. Burke's jury was instructed that the Commonwealth must prove provocation in order to convict Burke of voluntary manslaughter, when Massachusetts requires that the Commonwealth prove that Burke did *not* act on a reasonable provocation in order to convict Burke of voluntary manslaughter.

The Appeals Court found that this error was harmless because it "'was located in a portion of the charge that was plainly separate from the instructions on murder, thereby making it highly unlikely that the jury would have combined the conflicting concepts.'" *Burke*, 2004 WL 1335757, at *2 (quoting *Commonwealth v. Gilmore*, 794 N.E.2d 1284, 1290 (Mass. App. Ct. 2003)). Thus, reading the correct instructions on murder in context with the erroneous voluntary manslaughter instruction, the Appeals Court was satisfied that the error was harmless because Burke was convicted of second-degree murder, not voluntary manslaughter.

10

The Appeals Court's decision, that the error was harmless, was not an unreasonable application of clearly established federal law such that this court may overturn its decision on habeas review.[3]  Indeed, Burke fails to cite a single Supreme Court case supporting the proposition that his constitutional rights were violated by the improper instruction to a lesser-included offense upon which a defendant was not convicted.  This alone is fatal to his claim; if there is no "clearly established" Supreme Court precedent that Burke can point to, he cannot find relief after AEDPA.  *See* 28 U.S.C. § 2254(d)(1) (requiring that the law be "clearly established" before relief may be granted).

Even if Burke's claim could survive that hurdle, it would fail because the Appeals Court's decision was not an unreasonable application of the arguably related caselaw Burke cites.  Burke relies on cases such as *Francis v. Franklin*, 471 U.S. 307 (1985) for the proposition that an incorrect instruction which improperly lowers or shifts the burden of proof violates due process.  However, the Appeals Court's decision was not an unreasonable application of that caselaw because Burke was not

---

[3]  Because Burke's petition cites Supreme Court precedent, and relies on Massachusetts cases which themselves cited and relied on Supreme Court precedent, his claim is one that comes within AEDPA's limitations for issues "adjudicated on the merits in State court proceedings."  *See, e.g.*, *Clements v. Maloney*, 485 F.3d 158, 162 (1st Cir. 2007) ("We have also noted that, in some situations, citations to state court decisions which rely on federal law . . . may suffice to satisfy the exhaustion requirement.").

convicted of the crime which contained the erroneous instruction, voluntary manslaughter.  Instead, Burke was convicted of second-degree murder, and Burke does not allege that the trial court's instruction on the elements of that offense were erroneous. Burke does not cite any case or support for the proposition that error as to a voluntary manslaughter instruction somehow taints a correctly-instructed second-degree murder conviction.  The jury was properly instructed only to convict Burke if every element of the offense was proven beyond a reasonable doubt, and no allegation has been made that the second-degree murder instruction was erroneous in any way.

It is difficult to view the trial court's error as anything but harmless in the most fundamental sense, since it did not relate to a charge of conviction.  The Appeals Court did not err in holding so, nor was its decision an "unreasonable application" of existing Supreme Court precedent.

*ii.  Firearm Possession*

Burke next challenges the trial court's instruction regarding Burke's unlawful possession of a firearm charge. Specifically, he alleges that the trial court impermissibly shifted the burden of proof on the firearm charge when he instructed the jury that:

> [t]here is no evidence in this case that the defendant
> had a license to carry firearms and no evidence that he
> qualified for one of the legal exemptions from having
> to have a license to carry firearms.  For this reason,

the allegation of not having a license to carry a firearm or an exemption from that requirement, is not relevant to your deliberations in this case and you should not consider this issue as part of the commonwealth's obligation in this case.

Dkt. No. 30 Tr.6 at 121:2-10.

The problem with this argument is that having a firearm license is an affirmative defense under Massachusetts law, and not an element of the crime of unlawful possession. *See* Mass. Gen. Laws ch. 278 § 7 ("A defendant in a criminal prosecution, relying for his justification upon a license . . . shall prove the same; and, until so proved, the presumption shall be that he is not so authorized."); *Commonwealth v. Jones*, 361 N.E.2d 1308, 1311 (Mass. 1977) ("The holding of a valid license brings the defendant within an exception to the general prohibition against carrying a firearm, and is an affirmative defense. Absence of a license is not 'an element of the crime,' as that phrase is commonly used. In the absence of evidence with respect to a license, no issue is presented with respect to licensing. In other words, the burden is on the defendant to come forward with evidence of the defense. If such evidence is presented, however, the burden is on the prosecution to persuade the trier of facts beyond a reasonable doubt that the defense does not exist.").

The Supreme Court has explicitly recognized that states may constitutionally place the burden of production for affirmative defenses on defendants. *See Gilmore v. Taylor*, 508 U.S. 333, 341

(1993) (noting the line of Supreme Court cases establishing "States must prove guilt beyond a reasonable doubt with respect to every element of the offense charged, but that they may place on defendants the burden of proving affirmative defenses"). Consequently, the Appeals Court's decision to invoke the Commonwealth's brief in rejecting Burke's claim of an improper instruction on this matter of state law was not "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

   *iii. Ammunition Possession*

   Burke's final jury instruction challenge relates to the ammunition possession charge. However, his challenge on this instruction is not subject to habeas review. Burke consented to have the guilty finding as to the ammunition possession charge placed on his file; this procedure does not constitute a "judgment" under Massachusetts law. *Commonwealth v. Delgado*, 326 N.E.2d 716, 719 (Mass. 1975) (noting that "judgment" only occurs in criminal cases after sentencing). Section 2254 only allows a federal court to review habeas petitions from petitioners "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(b)(1). Thus, this court lacks jurisdiction to address Burke's complaint regarding the jury instructions for the ammunition possession charge. *See Molino v. DuBois*, 848 F. Supp. 11, 12 n.1 (D. Mass. 1994) ("Molino cannot seek federal habeas

14

relief of the assault and battery charge that was placed on file because he is not in custody as to it." (citing 28 U.S.C. § 2241(c)(3))).

B.   Destroyed Exculpatory Evidence

Burke next contends that his convictions must be overturned because Detective Keeler destroyed notes he took during Burke's first interview (before Burke's formal taped statement), and because the hospital lost clothes worn by Lochard, the victim, at the time of the shooting.

For missing, potentially exculpatory, evidence to constitute a constitutional violation, the defendant must show that it would have been material. *See Olszewski v. Spencer*, 466 F.3d 47, 55-57 (1st Cir. 2006) (setting out the Supreme Court tests established in *California v. Trombetta*, 467 U.S. 479, 485 (1984) and *Arizona v. Youngblood*, 488 U.S. 51, 55 (1988)).  For evidence to be material, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 485.  The Supreme Court then distinguished "potentially useful" evidence from "material" evidence in *Youngblood*, holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence

15

does not constitute a denial of due process of law." 488 U.S. at 58.

The Appeals Court did not err in finding that the destruction of Detective Keeler's notes and the loss of Lochard's clothing failed to meet this test.[4]

i.   *Detective's Notes*

Burke first objects to the destruction of Detective Keeler's handwritten notes from his first, un-recorded interrogation on the ground that it "deprived the defense the opportunity to compare the first statement to the second and verify the Officer's recollection of the contents of the first statement." The Appeals Court decision was not contrary to clearly established federal law when it found this insufficient to prove a violation of Burke's rights.

As noted above, for evidence to be material, it must "possess an exculpatory value that was apparent before the evidence was destroyed." *Trombetta*, 467 U.S. at 485. The Appeals Court observed that Detective Keeler "testified that the notes contained no significant information that was exculpatory

---

[4]  Because Burke's petition relies on Massachusetts cases which themselves cited and relied on Supreme Court precedent, his claim is one that comes within AEDPA's limitations for issues "adjudicated on the merits in State court proceedings." *See, e.g.*, *Clements v. Maloney*, 485 F.3d 158, 162 (1st Cir. 2007) ("We have also noted that, in some situations, citations to state court decisions which rely on federal law . . . may suffice to satisfy the exhaustion requirement.").

or anything that the defendant did not repeat in his taped statement." *Burke*, 2004 WL 1335757, at *3. The trial judge found that Keeler did not intend to deprive the defense of any evidence when he destroyed his notes. *Id.* That factual finding must be taken as true, absent clear evidence to the contrary. 28 U.S.C. § 2254(e)(1). Because no such evidence exists, Burke cannot prove that the Appeals Court erred, let alone meet the higher standard under AEDPA.

Likewise, nothing about the handwritten notes suggests that they contained information that Burke "would be unable to obtain . . . by other reasonably available means." *Trombetta*, 467 U.S. at 485. Burke himself was the source of the information contained in Detective Keeler's notes; Burke could, without testifying himself, have assisted his counsel in identifying and challenging any misrepresentations by Keeler and could have provided all of the evidence necessary to cross-examine Keeler at trial effectively. Because Burke does not, and cannot, allege that he was "unable to obtain comparable evidence by other reasonably available means," his claim cannot succeed. Thus, the Appeals Court's decision that "[t]here is nothing to the defendant's claim" that his rights were violated by destruction of potentially exculpatory evidence, 2004 WL 1335757 at *3, was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

That Burke himself had the knowledge necessary to cross-examine and impeach Detective Keeler also makes any alleged error harmless.  Burke has not identified any material comments he made in his first statement that he did not make in his second statement.  At trial, he also had a full opportunity to cross-examine Detective Keeler, and during the trial was able to elicit some of Burke's comments from his first statement.  Thus, even if Burke could show error, the loss of Detective Keeler's notes did not have "a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 623.

    ii.  *Lochard's Clothing*

Burke claims that he was denied access to Lochard's clothing because it was lost when Lochard was taken to the hospital.  He alleges that he could have analyzed the fibers around the gun shot wound to determine whether they were entrance or exit wounds, which would support his theory of self defense.

The Appeals Court "rel[ied] on the sound reasoning of the Commonwealth's brief" in determining that Burke's claim as to the loss of the victim's clothing was "without merit."  *Burke*, 2004 WL 1335757, at *3.  Looking to the analysis in the Commonwealth's brief, it appears to suggest that the Appeals Court was holding that Burke's claim is procedurally defaulted and meritless.  *Cf.* *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) ("Under §  2254(d), a habeas court must determine what arguments or theories

18

supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.").

First, Burke made his oral motion challenging the loss of clothing only after the close of evidence while the judge was discussing proposed jury instructions with counsel. Burke clearly knew before then that Lochard's clothing had been missing, but had never objected or made a motion during discovery or during the presentation of evidence. Under Massachusetts law, Burke's motion after the close of evidence is not a "contemporaneous objection." *See, e.g.*, 30A Mass. Practice. § 33.6 (describing the timing for objections in criminal trials); Mass. R. Crim. P. 13(d)(2)(A) (1997) ("A pretrial motion shall be filed within seven days after the date set for the filing of the pretrial conference report . . . or at such other time as the judge . . . may allow.").

Failure to object contemporaneously is an independent and adequate state ground which precludes habeas review as long as the state consistently applies the contemporaneous objection requirement, and did not waive it in the case at hand. *Burks*, 55 F.3d at 716. "Massachusetts has a routinely enforced, consistently applied contemporaneous objection rule." *Id*. The

Commonwealth raised this issue in its brief before the Appeals Court, and therefore framed the problem.  Burke's failure to object contemporaneously to the clothing will serve as a procedural bar to raising his claim on habeas "unless the petitioner can demonstrate cause for the default and prejudice stemming therefrom," or can show that barring his claim would "work a miscarriage of justice."  *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Burke cannot show such cause.  Burke has not alleged any "cause" for his failure to object in a timely manner.  As the First Circuit has held, "a petitioner's cause must relate to an objective factor, external to the defense, that thwarted . . . the efforts of the defendant or his counsel to obey the state's procedural rule.  Mere attorney error, not amounting to ineffective assistance in a constitutionally significant sense, is insufficient to constitute cause."  *Id.* at 717 (citations omitted).  Burke has the burden to prove both cause and prejudice.  *Id.* at 716 ("a habeas petitioner has the burden of proving both cause and prejudice").  However, Burke does not point to a single "objective factor" that would support his argument.  Thus, unless Burke can squeeze into the "miscarriage of justice" exception to the traditional federal habeas cause and prejudice analysis, his claim regarding the clothes is procedurally defaulted, and not subject to habeas review.  *See*

*McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (describing the exception as "narrow").

Burke, however, cannot fit his claim into such a tight space. The federal "miscarriage of justice" exception is meant to be used when a petitioner can make a claim of actual innocence. *See, e.g.*, *Schlup v. Delo*, 513 U.S. 298, 321 (1995) ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence."). Here, Burke has never asserted innocence. Thus, he cannot fit into the federal "miscarriage of justice" exception to the "cause and prejudice" requirement, and therefore his claim is procedurally barred.

Even if the claim was not procedurally barred, I would conclude that the Appeals Court did not make a decision contrary to or involving an unreasonable application of Supreme Court precedent. In order to make a claim for loss of exculpatory evidence, "the record must first show that evidence has been lost and that this loss is 'chargeable to the State.'" *United States v. Rahman*, 189 F.3d 88, 139 (2d Cir. 1999) (per curiam) (quoting *Colon v. Kuhlmann*, 865 F.2d 29, 30 (2d Cir. 1988) (per curiam)).

The record does not support the contention that the Commonwealth was responsible for disposal of Lochard's clothing. A paramedic removed Lochard's clothing while treating him for a gunshot wound.  He later gave Lochard's clothes to the hospital in the trauma room.  There is no evidence in the record regarding what happened to the clothes after that, and Burke does not allege that the police or prosecutors ever had custody of the clothing.

No Supreme Court precedent makes the Commonwealth responsible for the actions of an unaffiliated paramedic or hospital in these circumstances, and Burke fails to provide any relevant caselaw in support of his claim.  Thus, the Appeals Court's decision was not contrary to or an unreasonable application of Supreme Court precedent.

C.   Ineffective Assistance of Counsel

Burke also claims that he received ineffective assistance of counsel because his trial counsel failed to have DNA tests run on blood found on the victim's clothing and a gun holster recovered from the scene of the crime.  Such testing, Burke alleged, would confirm a match between the victim, the blood, and the holster, enabling Burke to bolster his argument that the victim had a large gun and was an aggressor against whom Burke had to defend himself.  Post-conviction testing matched the blood on the victim's clothing and the holster to the victim.  Burke thus

22

claims that this "newly discovered" evidence was material to his case, and that his counsel's failure to seek it out before trial was ineffective performance.

The Appeals Court's decision that Burke's counsel was not ineffective was not contrary to or an unreasonable application of Supreme Court precedent, here *Strickland v. Washington* and its progeny.  When engaged to determine whether counsel's performance was effective under the Sixth Amendment, the court must ask "whether counsel has brought 'to bear such skill and knowledge as will render the trial a reliable adversarial testing process.'" *Scarpa v. DuBois*, 38 F.3d 1, 8 (1st Cir. 1994) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  The inquiry has two prongs:  performance and prejudice.  In order to succeed on his claim, Burke must show both that his counsel's performance fell below an objective standard of reasonableness and, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 668.  The court must review the performance "not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented," *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991), "in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law." *Scarpa*, 38 F.3d at 15.  There is a "strong

23

presumption" that counsel's performance was not deficient. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

A state court's ineffective-assistance determination is due great deference "because the *Strickland* standard is a general standard, [and] a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009); *see also Harrington*, 131 S. Ct. at 788 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (citations omitted)). Consequently, the inquiry on habas review is "not whether counsel's actions were reasonable[, but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788.

Burke's counsel's performance did not fall below *Strickland*'s threshold. As the Appeals Court noted, even if Burke's counsel had obtained the DNA testing, the resulting evidence would have been duplicative of numerous other pieces of evidence that Lochard was armed. "From police testimony, the jury knew that the police had found a blood-stained holster and two rounds of ammunition that were incompatible with defendant's. Statements of the defendant were admitted in evidence establishing that Lochard was armed. . . . [T]he prosecutor acknowledged the holster's existence and never suggested that

24

anyone but the victim had bled at the scene." *Burke*, 2004 WL 1335757, at *2. Thus, Burke cannot show prejudice because the additional evidence linking the blood and the gun holster to the victim would not have changed the jury's verdict.

Indeed, the lack of testing was used by Burke's counsel in both his opening and closing statements as support for his theory that the police were not thorough in their investigation. Such a "trial strategy" is not subject to *Strickland* ineffective claims. *See, e.g.*, *Strickland*, 466 U.S. at 689 (noting that "sound trial strategy" does not give rise to an ineffective assistance of counsel claim).

The Appeals Court's determination that Burke's counsel was not ineffective for failing to get DNA testing done was not contrary to, or an unreasonable application of, Supreme Court precedent.

D.   <u>Highly Prejudicial Evidence</u>

Finally, Burke protests (1) testimony regarding pretrial photo identification procedures, and (2) testimony that Burke had sold drugs, as being highly prejudicial and thus depriving him of a fair trial.

However, as numerous circuits have held, "errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir.

25

2010) (quoting *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.
1983); *see also Wilson v. Sirmons*, 536 F.3d 1064, 1101 (10th Cir.
2008); *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008).

The Supreme Court has not at this point developed "clearly
established law" whether the introduction of irrelevant evidence
or "prior bad acts" evidence to show propensity to commit a
charged crime would violate due process.  *Estelle v. McGuire*, 502
U.S. 62, 70, 75 n.5 (1991) (declining to reach whether "it is a
violation of the due process guaranteed by the Fourteenth
Amendment for evidence that is not relevant to be received in a
criminal trial," and expressing "no opinion on whether a state
law would violate the Due Process Clause if it permitted the use
of 'prior crimes' evidence to show propensity to commit a charged
crime").  Thus, a habeas petitioner cannot point to "clearly
established" federal law in support of his petition when claiming
violations of due process on state evidentiary grounds, and
therefore Burke's petition must be denied under AEDPA.  28 U.S.C.
§ 2254(d)(1).

Even if the admission of the testimony was error, it was
harmless.  Burke's main contention is that testimony about photo
identification and about drug dealing was evidence about "prior
bad acts" that would unduly influence the jury.  However, Burke
cannot show prejudice, let alone "a substantial and injurious
effect or influence in determining the jury's verdict," *Brecht*,

507 U.S. at 623, because there was other evidence of his drug dealing, including his own tape recorded statement telling Detective Keeler that he had sold drugs.  Even if there was error with respect to the admission of additional evidence tending to show Burke had engaged in drug dealing, it was harmless.

## IV.  CONCLUSION

For the reasons set forth above, I direct the Clerk to DISMISS Burke's petition for a writ of habeas corpus.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE